# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MARY KAY STACHULAK,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 2:14-CV-394-PRC<br>) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mary Kay Stachulak on October 30, 2014, and a Plaintiff's Brief in Support of Motion for Summary Judgment [DE 19], filed on July 10, 2015. Plaintiff requests that the May 30, 2013 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for further proceedings. On September 21, 2015, the Commissioner filed a response, and Plaintiff filed a reply on October 5, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on September 7, 2011. Her alleged onset date is June 1, 2007. Her claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on March 4, 2013. The hearing was conducted by video with Plaintiff sitting in Gary, Indiana, and Administrative Law Judge (ALJ) Lauren R. Mathon sitting in Tucson, Arizona. Also in attendance were Plaintiff's attorney and Plaintiff's husband. An impartial vocational expert testified by telephone. On May 30, 2013, the ALJ issued a written decision denying benefits, making the following findings:

    1.    Based on earnings through 2007, the claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2007[,] through her date last insured of December 31, 2010.

3. As of the alleged onset date, June 1, 2007, the claimant had only a mental impairment: a bipolar disorder.

4. Beginning September 2009, and through the date last insured, the claimant had the following severe combination of impairments: fibromyalgia, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, obesity, and a bipolar disorder.

5. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she had the following non-exertional physical limitations:
    - never climb ladders, ropes or scaffolds,
    - occasionally climb ramps and stairs, and
    - frequently balance, stoop, kneel and crawl.

    With "moderate" defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily," the claimant had the following non-exertional mental limitations:
    - mild limitations in the ability to understand and remember simple instructions,
    - mild limitations carrying out simple instructions,
    - mild limitations making judgments on simple work-related decisions,
    - moderate limitations understanding and remembering complex instructions,
    - moderate limitations making judgments on complex work-related decisions,
    - mild limitations interacting appropriately with the public,
    - mild limitations interacting appropriately with supervisors,
    - mild limitations interacting appropriately with co-workers, and
    - moderate limitations responding appropriately to usual work situations and to changes in a routine work setting.

7. Through the date last insured, the claimant was unable to perform any past relevant work.

8. The claimant was born [in 1961]. As of December 31, 2010 (the date she is last insured for a period of disability and Disability Insurance Benefits), Ms. Stachulak was 49 years old, which is defined as a "younger individual age 18-49."

9. The claimant has a limited education and communicates in English.

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

11. Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

12. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2007, the alleged onset date, through December 31, 2010, the date last insured.

(AR 21-33).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal and remand for further proceedings, or alternatively an award of benefits, arguing that the ALJ erred in determining the credibility of Plaintiff and her husband, in assigning weight to the medical opinions in the record, in assessing Plaintiff's RFC, and in failing to address contrary evidence in Step 3.

**A. Credibility**

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quotation marks omitted) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186,

at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

As an initial matter, Plaintiff finds fault with the ALJ's use of boilerplate language in the credibility determination. The Seventh Circuit Court of Appeals has often criticized this language. *See, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). But an ALJ's use of the boilerplate language does not amount to reversible error if she "otherwise points to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367-68. Accordingly, the Court proceeds to consideration of the substance of the ALJ's analysis.

Plaintiff makes three challenges to the substance of the ALJ's credibility determination: (1) the ALJ's consideration of unsought treatment was improper, (2) the ALJ erred in discrediting Plaintiff for helping with her son's move, and (3) the ALJ gave improper reasons for discrediting the testimony of Plaintiff's husband. The Commissioner defends the ALJ's decision on these grounds and also argues, in the alternative, that any error made is harmless. The Court will address each argument in turn.

*1.     Unsought Treatment*

In making her determination regarding Plaintiff's credibility, the ALJ noted that Plaintiff has not (1) seen a rheumatologist; (2) had emergency mental health treatment; or (3) sought chiropractic treatment, acupuncture, yoga, tai chi, or swimming/aqua therapy for her fibromyalgia. The ALJ did not ask Plaintiff why she did not pursue these avenues of treatment. Plaintiff identifies two problems with the ALJ's consideration of these unsought measures, and the Court agrees with Plaintiff on both

8

grounds. First, an ALJ is not permitted to make negative inferences regarding a plaintiff's credibility based on failure to seek treatment without first giving the plaintiff an opportunity to explain why the treatment at issue was not sought. *Roddy*, 705 F.3d at 638; SSR 96-7p. Second, the ALJ does not point to any evidence in the record that indicates the alternative methods of treatment for fibromyalgia would be beneficial. In other words, the ALJ relied on her own lay opinion regarding the proper medical treatment for Plaintiff's fibromyalgia. An ALJ is not permitted to "play doctor" and make independent medical conclusions. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (finding the ALJ impermissibly "played doctor" in concluding, without any support from the record, that the plaintiff would take insulin for her diabetes if it was as severe as alleged); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong."). The ALJ's errors in considering these unsought methods of treatment require remand.

2. *Helping with Son's Move*

Plaintiff asserts that it was error for the ALJ to discredit Plaintiff's credibility because she helped with her son's move. The ALJ wrote that "assisting with a move generally requires more strength and stamina than Ms. Stachulak admits." (AR 28). However, the ALJ did not seek any information regarding Plaintiff's level of exertion in the move. As Plaintiff points out, Plaintiff's help may have consisted of sitting and labeling boxes overseeing movers. Further, as the ALJ notes, Plaintiff experienced increased pain after the move. The sparse information in the record regarding Plaintiff's exertion during the move is not enough to create a logical bridge from the evidence to the ALJ's conclusion. *See Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir 2015) (criticizing the ALJ for discrediting the plaintiff for helping to remodel her house where no evidence was in the

record about the level of activity involved and where the plaintiff suffered severe back pain as a result). Independent of the errors regarding unsought alternative treatment, remand is required on this ground.

*3. Husband's Credibility*

Plaintiff contends that the ALJ erred when considering the credibility of her husband's testimony. The regulations provide that an ALJ may consider information from "non-medical sources," which includes spouses. *See* 20 C.F.R. § 404.1513(d)(4); *see also* SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (listing "other sources" as defined in § 404.1513(d) as including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers"). Social Security Ruling 06-3p clarifies how opinions from sources that are non-medical sources are considered. *See* SSR 06-3p, at *1. In considering statements from non-medical sources, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*.

The ALJ gave Mr. Stachulak's testimony "limited weight" and provided four reasons for doing so: (1) Mr. Stachulak may be biased by affection for Plaintiff or his financial interest in the case, (2) symptoms testified to regarding the period of time during which Plaintiff was abusing alcohol or prescription medication would be reasonably related to the substance abuse, (3) Mr. Stachulak is not medically trained to make exacting observations as to Plaintiff's symptoms, and (4) Mr. Stachulak's testimony reflects his observations, not Plaintiff's maximum capacities.

10

First, the ALJ did not err in discounting the weight given to Mr. Stachulak's testimony because the ALJ explained that Mr. Stachulak's statements may be "colored by affection" for Plaintiff and, further, that he has a financial interest in the outcome of Plaintiff's case. (AR 29). This is consistent with the mandate of SSR 06-3p that consideration of "such factors as the nature and extent of the relationship" between the third party and the claimant is appropriate." SSR 06-3p, at *6.

The ALJ's rejection of Mr. Stachulak's testimony as reflecting symptoms attributable to substance abuse, however, is more troubling. The ALJ restricted Mr. Stachulak's testimony to the period from the alleged onset date of June 1, 2007, to the date last insured of December 31, 2010. The ALJ noted that Plaintiff said she has been sober since 2007 (no exact date is given). The ALJ also noted that, in October 2010, Plaintiff took extra Xanax. This is the only period of abuse of medication occurring in the period considered by Mr. Stachulak's testimony, though the ALJ also noted a time when Plaintiff abused pain medication after the date last insured.

The ALJ does not identify statements made by Mr. Stachulak that indicate Plaintiff's behavior was different during the times the ALJ identifies as periods of abuse. There is no evidence in the record of substance abuse by Plaintiff from January 2008 through August 2010 and from November 2010 through December 2010—a majority of the time period considered by Mr. Stachulak. Further, the ALJ identifies no evidence supporting her assumption that the Plaintiff's mental symptoms are a result of substance abuse. The lack of evidence supporting the ALJ's determination, the lack of indication that Plaintiff's symptoms were different during periods of substance abuse in comparison to periods free from abuse, and the large percentage of time free from

substance abuse cast doubt upon the ALJ's decision to discredit Mr. Stachulak's testimony on this ground.

Next, Mr. Stachulak's lack of medical training may be a factor that "tend[s] to support or refute" his testimony and, thus, is a proper consideration. SSR 06-3p, at *6. However, the Court cautions the ALJ to not place too much emphasis on this consideration. Social Security Ruling 06-3p expressly provides for the consideration of evidence from non-medical sources who have not seen a claimant in a professional capacity, and, though a source's qualifications are specifically listed as a factor for non-medical sources seeing a claimant in a *professional* capacity, this factor is not expressly given for *non-professional* capacity sources such as a spouse. *See id.*

Finally, though Mr. Stachulak's testimony reflects only his observations—and not necessarily Plaintiff's maximum capacities—the ALJ should also bear in mind that agency regulations recognize that the closeness of familial relationships may allow a family member to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, at *2.

On remand, the ALJ shall assign weight to Mr. Stachulak's testimony in accordance with this opinion.

*4. Harmless Error*

The Commissioner would have the Court ignore the errors noted above in light of the evidence properly cited by the ALJ in support of her decision. However, errors in the credibility determination are harmless only if "a contrary determination would have to be set aside as incredible" or if "the trier of fact says that [she] would have made the same determination even if the questioned circumstances had been different from what [she] thought them to be and [she] gives

an adequate reason for that back-up position." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). As the instant determination satisfies neither criterion, the Court cannot find the error to be harmless.

## B. Weight to Medical Opinions

An ALJ is required to evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. § 404.1527(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id.* § 404.1527(c)(1)-(6). Under what is known as the "treating physician rule," the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2).

Dr. Pradeep Thapar, Plaintiff's treating psychiatrist, submitted a mental capacity assessment. The ALJ gave the opinion little weight, finding that the opinion is internally inconsistent and is inconsistent with treatment notes. Plaintiff argues that the ALJ committed reversible error in failing to address the checklist of factors in 20 C.F.R. § 404.1527(c). Plaintiff further argues that instead of rejecting inconsistent opinion, the ALJ should have contacted Dr. Thapar for clarification.

The ALJ is correct that Dr. Thapar's opinion appears to be inconsistent. For example, though Dr. Thapar opined that Plaintiff has slight difficulties in maintaining concentration, persistence or pace, he marked Plaintiff as having moderate limitations in every subcategory of sustained concentration and persistence. In fact, all of the functional limitations are listed as "slight" and all

13

of the subcategories are marked as "moderate." Because this case is already being remanded, further analysis of the ALJ's assignment of weight to this opinion is not necessary. Instead, the Court directs that, on remand, the ALJ shall obtain either a new Mental Capacity Assessment from Dr. Thapar or a clarification of his findings contained in the assessment in the record.

Plaintiff also argues that the ALJ erred when she wrote that, even if she had accepted the moderate functional limitations in Dr. Thapar's opinion, "the vocational expert testified that moderate limitations in all work-related mental functions does not preclude work." (AR 31). Plaintiff correctly notes that, in addition to the moderate functional limitations, Dr. Thapar opined that "even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate." (AR 459). This opinion was not included in the hypothetical questions to the vocational expert. Because the full opinion was not incorporated in the hypothetical question, the ALJ erred in stating that vocational expert testimony indicates that acceptance of Dr. Thapar's more restrictive opinions would still leave Plaintiff able to work.

Next, Plaintiff asserts that state agency consultant Dr. Brill's opinion is inconsistent with the findings in Plaintiff's record of pain and reduced range of motion in her shoulders, neck, back, and knees. Though Plaintiff raises this argument under the umbrella of the RFC finding, this argument is better made as an argument that the ALJ failed to evaluate Dr. Brill's opinion pursuant to 20 C.F.R. § 404.1527. Though the ALJ functionally adopted Dr. Brill's opinion of Plaintiff's physical RFC, the ALJ did not write that she did so. The ALJ also failed to expressly evaluate this opinion, consider the checklist factors, and assign weight to Dr. Brill's opinion. ALJs must evaluate all medical opinions. 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). On remand, the ALJ must evaluate and assign weight to this opinion

in accordance with agency regulations. Alongside the other requirements provided in the regulations, this explanation of weight given to the opinion must address whether the opinion is consistent with evidence of Plaintiff's pain and reduced ranges of motion. *See* 20 C.F.R. § 404.1527(c)(4).

Plaintiff also argues that the ALJ should have applied the checklist of factors in weighing the state agency consultant Dr. Clark's statement that there is insufficient evidence to render a medical opinion on Plaintiff's alleged mental impairments. However, this statement is not a medical opinion, so the checklist of factors need not be addressed. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impaiment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

### C. RFC Assessment

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence

15

of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC by filling an evidentiary deficit with the ALJ's lay understanding, by not analyzing Plaintiff's obesity, by misunderstanding the fluctuating nature of chronic disease, and by mechanically applying the regulations regarding age categories.

As noted above, regarding Plaintiff's mental impairments, the ALJ gave little weight to treating psychiatrist Dr. Thapar, and the state agency reviewer found insufficient evidence to form a medical opinion. Plaintiff argues that this left an evidentiary deficit regarding her mental RFC. However, an ALJ need not rely on a medical opinion in determining the RFC. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz*, 55 F.3d at 306 n.2). Still, the ALJ must identify the evidence that she relied upon and explain how the evidence led the ALJ to the RFC finding. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (finding error in the ALJ's failure to cite evidence that supports specific limitations in the plaintiff's RFC). Given that the Court has directed the ALJ to obtain a new opinion or clarification from Dr. Thapar, the mental RFC—and the evidence cited in support of it—may change significantly on remand. Consequently, a close analysis of evidence

16

cited in support of the ALJ's mental RFC determination is not warranted. On remand, the ALJ is directed to set forth the evidentiary basis for the RFC finding.

Plaintiff argues that the ALJ did not analyze how obesity affects Plaintiff's ability to work. Under Social Security Ruling 02-1p, an ALJ must specifically address the effect of obesity on a claimant's limitations. *See* SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). The consideration of obesity should be an integral factor underlying the construction of the RFC. *Id*. at *6. The ALJ must consider whether obesity causes any functional limitations and explain that conclusion: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id*. at *6-7. The Ruling provides some guidance on how obesity is factored into the RFC determination:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

*Id*. at *6.

Although the ALJ noted Plaintiff's Body Mass Index of 30.54 to 32.89, which is considered "obese" under the guidelines, the ALJ did not provide any specific analysis of how Plaintiff's obesity affects the RFC. Though Plaintiff's obesity may have been a factor the ALJ relied upon in limiting Plaintiff to light work but not more than light work, the ALJ did not say so or otherwise indicate that she made that determination. The Commissioner would have the Court only require

17

analysis of the effects of obesity when a claimant is morbidly obese, but the Ruling contains no such limitation, so analysis of Plaintiff's obesity is required. The ALJ did not provide the requisite discussion. *See* SSR 96-8p, at *7; SSR 02-1p; *Briscoe*, 425 F.3d at 352; *Milad v. Colvin*, No.14 CV 4627, 2016 WL 374138, at *6 (N.D. Ill. Feb. 1, 2016) (citing *Schmidt*, 395 F.3d at 744).

In a similar vein, on remand, the ALJ is directed to consider Plaintiff's impairments in combination, especially in light of her obesity. *See Clifford*, 227 F.3d at 873; *Terry*, 580 F.3d at 477; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff further takes issue with the ALJ's characterization of her mental health record. Though the ALJ notes some evidence of mental impairment, the ALJ also identifies times when Plaintiff was without symptoms and decides that they "hardly suggest[] disability as of the date last insured and continuing for at least 12 consecutive months." (AR 28). However, the Seventh Circuit Court of Appeals has noted that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Further, "[a] person who has a chronic disease . . . , and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Even if such a person could work on symptom free days, the number of symptomatic days could preclude the person from full-time work. *See id.* Further, Plaintiff identifies evidence in the record that shows she experienced periods of mania, depression, and anxiety as well as periods of decreased symptoms. The ALJ cannot selectively cite evidence without confronting significant evidence that undermines her conclusions. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). On remand, the ALJ shall carefully analyze Plaintiff's mental health records in light of precedential case law.

Lastly, Plaintiff asserts that, because she turned fifty years old one month after her date last insured, if the ALJ had found her limited to sedentary work, "a non-mechanical application of the 'grid' rules would have mandated a finding of 'disabled.'" (Pl.'s Br. 14). Per agency regulations, a person limited to sedentary work as of his or her fiftieth birthday who is unable to do past work and has no transferable skills is disabled. 20 C.F.R. Pt. 404 Subpt. P, App. 2. Further, age classifications are not to be applied "mechanically" in borderline situations. 20 C.F.R. 404.1563(b). However, the regulations do not go as far as Plaintiff contends, and mandate a finding of disabled if a claimant's age is close to the threshold age. Instead, the regulations require the ALJ to "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." *Id.* If, on remand, using the older age category would result in a determination or decision that Plaintiff is disabled, the ALJ is directed to consider using the older age category in accordance with the regulations.

## D. Step 3

In Step 3 of the sequential analysis, an ALJ determines if the claimant's impairments meet or equal a listed impairment in the appendix to the regulations. The ALJ must refer to significant medical evidence and the functional limitations she considered in reaching her conclusions about the severity of mental impairments. *Craft*, 539 F.3d at 675. An ALJ cannot ignore evidence favorable to a plaintiff's claim. *Yurt*, 758 F.3d at 859. Here, in her Step 3 analysis for Listing 12.04(C), the ALJ found "no evidence of a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate." (AR 24). However, Plaintiff's treating psychiatrist, Dr. Thapar, opined that Plaintiff had such a residual disease process. Plaintiff correctly

19

asserts that the ALJ should have factored this opinion into her Step 3 analysis. Recognizing that the Court has already directed the ALJ to obtain either a new mental capacity assessment or clarification of the current assessment from Dr. Thapar, the Court directs that, on remand, the ALJ must consider any such opinions regarding residual disease process in the record.

### E. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Plaintiff's Brief in Support of Motion for Summary Judgment [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 30th day of March, 2016.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT